The final matter today, number 25-1023, 5-Star General Store et al. v. American Express Company et al. At this time, would counsel for the appellants please introduce himself on the record to begin. May it please the court, my name is Peter Barber. I represent the defendant appellant, American Express Company, which I'll refer to as Amex. As I'm sure the court knows, this case involves a finding by the district court that Amex waived its right to require arbitration with about 5,000 merchants. Are you going to reserve any time for rebuttal or no? Oh, I'm sorry. I did mean to reserve three minutes for rebuttal. Thank you, Your Honor. Start again, I interrupted. Sure. This case involves a determination by the district court that Amex waived its right to require arbitration with 5,000 merchants on the basis that Amex had reportedly refused to pay, even though Amex had actually repeatedly offered to pay AAA the filing fees that AAA said were required. And I want to focus this, I guess, this afternoon at this point on two basic questions. Wasn't there a disagreement about what was required, what AAA required, and AAA made a final decision as to what they said was required and you wouldn't pay it? Well, there was a long, months-long discussion with AAA, and then four times over, AAA said that they were going to charge about $900 per case. They said that unequivocally, definitively, and during that time period, Amex agreed to pay that amount and to proceed with the arbitrations, and had counsel for the plaintiffs agreed, these cases would have proceeded to arbitration. So, yes, there was a failure to pay, but it was a failure to pay that was frankly engineered by the plaintiffs here, because they said, we understand AAA, you say $900 is enough, but we want you to charge $3,500, and we want you to do that because But isn't the answer pay and then argue about it in the arbitration? Well, the standard we submit is first, it's a question of a waiver, and waiver is an equitable doctrine, and I'd like to talk about that, but there's the preliminary question also of who should have decided this, whether it's the district court or the arbitrator. I'm happy to handle those in either order the court prefers. But AAA would appoint an arbitrator who could have discussed how much, what the appropriate fee was, but they required upfront payment of what they determined was the appropriate fee based on their decision to place the claims in two different buckets, right? Well, they did that the fifth time around. Four times around, they said it was a lower number. The fifth time around, after they've been back But it was never final until it was final. There was ongoing discussion. The plaintiffs in their brief explained why they were insisting and why they were in agreement with the fees that AAA were wanting you to pay. Well, they were happy when the AAA raised the fee almost fourfold over. They were not happy at the lower fee, even though But you chose AAA to arbitrate. Of course, absolutely. But AAA set their own rules. Well, the arbitration agreement specifies that they could have pursued arbitration in JAMS or AAA. The plaintiffs chose AAA. We were fine with that. We actually, against these same plaintiffs, had many arbitrations that proceeded in AAA. We also had many arbitrations against these same plaintiffs that pursued in before JAMS. Here we had a disagreement about fees. Our position was that because the AAA had unequivocally said multiple times over, this is all you have to pay, we thought we were being held up Did they unequivocally put that in writing somewhere? They did, four times over. It's cited in our brief. There are multiple letters where they say the plaintiffs have tried to set this up in their brief as just setting up a framework originally. It wasn't a framework. It was an absolute determination that the fee was I think $925 per case. We agreed to pay it. We were ready to go. Let me take on the waiver point first because I think that may be the most poignant one. The question for the court is whether Amex waived through unequivocal conduct, said it did not want to arbitrate. Is that what Amex's conduct said? No. Amex said we want to arbitrate. We are happy to pay the $925. We want to arbitrate. It was the plaintiffs who said no, no, no. We want to fight to make you pay more money for no reason. AAA said we could proceed on the basis of $925 per case. They said no. We want to put more pressure on Amex. We want to force them to pay extra millions of dollars in order to try and extort a settlement. That's what this is. This is the name of the game in mass arbitration. It's being rectified and AAA rules are now different today, but at the time, the name of the game was file as many cases as possible, gin up the upfront fees, use that as a weapon to try and extort a settlement that has nothing to do with the merits of the case. We very much opposed that strategy and we fought it tooth and nail, but we didn't say we don't want to arbitrate. We didn't waive our right to arbitrate. We said we want to arbitrate, but at the rate Let's leave that argument aside because I'm not sure it's working particularly well. Really, you have a, maybe you could clarify this, but there's a threshold question for us, I think, which is, does this court need to conduct a separate analysis about whether the district court has the power to decide whether you defaulted, right, under Section 3? Correct. Or whether the district court has the power to decide whether you waived, right? And we think that arguments as to that. Yeah, I think that case, that argument, that issue is fully governed by this court's decision in the Marie case, which involved exactly the same sort of argument about whether a party had waived its right to argue to arbitrate under section three and four of the FAA. And this court in Marie followed the House Sum and Green Tree cases from the Supreme Court and said, there's two ways we're going to look at this. One is, is the issue procedural or substantive? Excuse me. And what one is, who has the relative expertise here? Is it a district court or is it an arbitrator? And in the Marie case, it was a waiver through litigation conduct before the EEOC. And this court had no trouble saying, that's the kind of decision that should be made by a district court. It's substantive. The district court has the requisite expertise. Here, the facts could not be more different. We have the, it was a purely procedural matter. It was a dispute with AAA over the amount of fees that should be set and how they should be paid. It was a quintessentially procedural matter that we submit should have gone to an arbitrator. And when it comes to comparative expertise, it seems clear to us that an arbitrator has the relative expertise to determine. How do you get out of that circle? If AAA in the end was insisting upon the higher fees and they weren't going to appoint an arbitrator, you're saying that the court should have ordered AAA to appoint an arbitrator to handle that issue, even though AAA hadn't gotten paid what they are saying they needed to be paid? Well, it was always the plaintiff's option to pay the fees if they wanted to get a determination from AAA. They chose not to do that. But in any event, this issue has become moot because of changes to the AAA rules since this case first arose. The AAA has been trying to rein in these abusive mass arbitration schemes. I'm sorry, didn't the last word in this case on this record that AAA said is that this issue will not be reconsidered? No, there was never any decision by AAA that this case would not be reconsidered. All AAA said eventually was that the case was administratively closed. Nothing said it couldn't be reopened. And in fact, even the fee determinations were all interim administrative fee determinations. There was nothing final about any of them. And under new AAA rules, this issue would not reoccur. If they want to redo this case, there's new rules. There's none of this extortion through mass payments, millions of dollars upfront payments. None of that's required anymore. I would also like to just touch on what I think is one of the stranger things in this case, because the district court basically said, I am going to decide whether there was a waiver here. But then the district court said, I can't consider the facts bearing on waiver. Waiver is a factually intensive determination that goes to whether the parties conduct. The district court was considering a motion to stay pending arbitration provided that the movement wasn't in default. That's correct. So how, I don't understand the argument that the district court had to send it to arbitration without making that provisional decision about default. Well, there's nothing in section three of the FAA that says a determination of default has to be made by a court as opposed to an arbitrator. In fact, that's one of the things this court said in Marie, is that sometimes it's for the court, sometimes it's for the arbitrator. The district court was not required to decide this itself by any means under, and we've cited many, many cases where courts have deferred to arbitrators to make these sorts of determinations. But the point I was trying to- Well, Marie says the district court is statutorily obligated to resolve waiver issues, at least with respect to litigation-related activities, right? Sure, that's what Marie says, yes. Yep. And I think your position is the non-payment of fees here is not a litigation-related activity such that- No, it's a quintessentially procedural issue for AAA, and it's an area where AAA and a AAA arbitrator would have the requisite expertise. We never got an arbitrator in this case because there was this fee dispute, but there's now a path for us to get an arbitrator under the new AAA rules because we won't have this fee dispute. Okay, but should we consider the new rules for purposes of deciding the matter before us? Because that happened after this happened. Yes, they're part of the record. We submitted them to, I believe, both the district court and your Honor, so they are part of the record. Okay. Absolutely. But the sort of catch-22 in this case is the district court said, I get to decide whether there's waiver, but at the same time said, I can't consider the facts relating to waiver. Waiver is a factually intensive inquiry. And the court did that by relying on two cases, the dealer computer services case and the Walridge case. But the holding in those cases was that no, issues relating to fee payments are for an arbitrator, not for a court to resolve. So the court basically turned those cases on their head and said, I have to determine it, but I can't look at the facts. So no one gets to look at the facts. Can I just, this isn't really a legal question, but you go before the district court, you ask for a stay of litigation. If the district court, let's walk through what would have happened if the district court had granted your order to stay litigation and compel arbitration. There's no, the court can't compel FAAA to reopen the arbitration, right? They can't compel you to pay the fee, your clients to pay the fees they already refused to pay. Like, right? What happens if the district court grants your stay back in time when you were there? Well, assuming they actually wanted to arbitrate, and I think there's a real open question as to whether that was ever their intent. But it seems like there was an open question as to whether you wanted to arbitrate. No, we absolutely wanted to arbitrate. We did arbitrate thousands of arbitrations against these same folks. We offered to pay to arbitrate these ones as well. Did AAA charge you less in the other arbitrations? Then there were two different types of AAA arbitrations. One where only damages were sought, those got arbitrated, and there were a bunch of arbitrations before jams brought by these same folks where both damages and injunctive relief were sought. We paid the fees, and those were arbitrated but ultimately dropped by the plaintiffs because their goal is never to actually arbitrate these claims. Their goal is to engage in a holdup of companies like AmEx. So that didn't answer my question. I'm sorry. Did you pay the fees that they were requesting in this case and the other cases that involved both equitable relief and damages? In these 5,000 cases . . . In the other ones, not the ones that are before us. You said you arbitrated in AAA and jams. You said some of those involved requests for equitable relief. The question is, did you pay the higher fee in those cases? We paid the fee that was requested by jams and by AAA, and those cases proceeded to arbitration. Okay, I'm going to try it again. We got a dispute here about 900 versus 3,500. Did you pay 3,500 in those other cases involving damages and injunctive relief? No, because that was not the fees that were charged by AAA and jams in those cases, but we did pay the fees that were charged by AAA and jams in those cases. Were those cases arbitrated subsequent to this dispute? It was all going on at roughly the same time. Okay, thank you. Thank you, Counsel. At this time, would Counsel for the Appellees please introduce himself on the record to begin? Thomas Scott Rilton, representing Five Star General Store. Judge McElroy correctly held that Amex cannot repeatedly refuse to pay its arbitration fees, causing the arbitrations to shut down and then turn around and compel the parties back into a closed arbitration. This follows straightforwardly from the plain text of the FAA, but it's also buttressed by holdings from the alternative, none of which Amex can overcome. So first, as this Court explained in Murray, textually under the FAA, a court is only permitted to stay a court action pending arbitration if the applicant for the stay is not, quote, in default in proceeding with such arbitration. And courts across the country have held that default is an antecedent statutory determination that a court must make before compelling arbitration. And Amex does not cite a single case holding that the question of default under Section 3 is one for arbitrators. And Amex's argument would effectively put the cart before the horse, where an arbitrator is determining a federal court's power to compel arbitration. Second, as to the merits, refusing to pay your arbitral fees, causing the arbitration to shut down, is a default under the plain meaning of the term. Now, Amex has spent a lot of time relitigating what happened before the AAA, but as the district court looked at it, and we think correctly, there's only really three undisputed facts that are necessary to resolve this question. The AAA required Amex to pay its filing fees, or it would close the cases. Amex refused to pay those fees, and then the AAA closed the cases. In doing so, it used the same administratively closed language that it's used in case after case involving nonpayment. And indeed, it's hard to know what in default in proceeding with such arbitration would mean if it doesn't count shutting down the arbitrations by refusing to pay your filing fees. But... What fees got paid in the other cases involving injunctive relief and damages? So, in there were other JAMS arbitrations where JAMS has a separate fee schedule. Yes. And so my understanding is that the fees under that schedule were paid, but as my friend on the other side explained, he said, they paid the fees that were required by the arbitral forum, and that's what they should have done here, which is when the AAA made its determination that these are the fees that you must pay, or we're going to close the arbitrations, Amex was required to pay those fees. Were any of those dual remedy cases arbitrated by AAA? So the dual remedy cases involving injunctive relief, the cases that moved forward in the AAA were damages only cases. And so this batch was the batch of injunctive relief cases. The AAA's rules say $3,500 for injunctive relief. And as I mentioned, the key question is really the AAA's ultimate decision on fees. If Amex disagreed with that, it had a path. The AAA said, pay your fees, go before the arbitrators, and you can renew your disputes. How do you respond to Amex's arguments that procedural issues should be decided by an arbitrator, and that's really what was here before the district court? So two answers there. I think the text of the statute really does resolve this question, which is the court can only compel arbitration, providing that the party is not in default. And that's how this court put it in Murray. It's how the Seventh Circuit put it recently in Amahas. It's how the Tenth Circuit put it in Cahill. And I think Murray is sort of best read as doing a belt and suspenders approach. So it said, this language would seem to place a statutory command on courts to decide the waiver issues themselves. At footnote 10, it then suggested that parties couldn't contract away that determination. And then it looked at some other factors. But this court and the Supreme Court, I think, have recently emphasized the FAA should really be interpreted pursuant to its text. But if you go into the procedural question, as Murray described Howsam, Howsam is a rough proxy, was the term that Murray used, for when there's silence in the party's arbitration contract, who do the parties assume would decide the issue? But when you have a statutorily antecedent determination, and this is exactly what this court held in Oliveira v. New Prime, the parties can't contract that away. The parties can't contract away who decides default under Section 3 of the FAA. And so in some sense, Howsam is asking a different question. It's asking presumptions when there's contractual silence. And then as to the term procedural, I think Amex makes a lot of this term. But actually, Murray described the issue in front of it as, and this is on page 13, procedural waiver. And that's because the procedural substantive distinction is, again, this sort of rough proxy. It's a rule of thumb. And let me ask, you said who decides default. And it's either the court or the arbitrator. But here, the arbitrator didn't decide default. It was AAA. Right. So because the arbitration never got actually to a merits arbitrator, it ended up before AAA. I think actually that's quite helpful for us, because that's going to be true in a lot of situations where you've got sort of your quintessential defaults. You see this in the case law. It's parties who don't show up, parties who don't respond, parties who don't pay their fees. Would that be analogous, for example, if somebody files a claim in the U.S. District Court and the answer is not filed timely and the clerk of court can enter that default? That would be sort of like that equivalent? It's similar. It's similar. But I think the key difference, and this is what the Ninth Circuit pointed out in Brown and what the District Court also pointed out, which is that in federal court, if you don't show up, if you don't follow the rules, that counts against you. You can get a default entered by the clerk and then a default judgment from the court. But because AAA and other arbitrators are private organizations that need fees to run, if you just don't show up or don't pay your fees, you just get out of it. There's no finding of liability against you. And so in that sense, you would have a situation, I think this is the situation that would happen if you adopted Amex's reading, where not paying your fees, not participating by the rules benefits you. You create this long delay. You've got all this back and forth. You're running up the other side's fees. And then if you go, the other side finally goes to court when the arbitrations have closed down. And then you say, no, actually send us back into arbitration. And in arbitration, again, if there's another decision that Amex doesn't agree with, they could shut it down again. And so it would create, as Judge Thompson pointed out, this vicious circle. And that's exactly what Marie said. The purposes of the Federal Arbitration Act, it's the speedy and efficient resolution of disputes. That's not going to be served by ping-ponging parties back and forth between arbitration. How do you suggest we interpret the litigation-related activity component of Marie as it applies to this case? I think this would fall squarely within litigation-related activity. Marie made clear that that doesn't just mean litigation in front of courts. It said it includes litigation-related activity in another litigation forum. And this court in Tyco, for example, adjudicated the question of waiver based on conduct in an arbitration. It's at pages 44 and 45 of Tyco. And if you look at everything Marie looked at, so Marie looked to the text, even stronger on the text, because it's default in proceeding with such arbitration. I think the plain meaning of that is conduct that occurs in arbitration is something that a court can look to. So Marie said, waiver through litigation conduct is a default. Default includes conduct in arbitration under the plain text of the statute. But all the other factors Marie looked to, all of those sort of belt and suspenders reasons, all of those apply here, if not more strongly. So there's the inefficiency I mentioned. You're shooting parties back into a closed arbitration where Amex has never said that it would pay the full fees that the AAA required. There's comparative expertise. And I think this is key because in a lot of default cases, you're never going to get past the AAA. So then the question of comparative expertise is who is more expert at interpreting default under a federal statute? It's going to be a question of text, the meaning of the text in the 1920s when the FAA was enacted. It's going to involve looking at case law around the country. And so the question is, who is more expert at making that default determination? A AAA administrator who may not be an attorney or a federal court. So I think comparative expertise absolutely points in the direction of having this be a gateway decision for courts. It also, a factor Marie looked to, it's not going to be entwined with the merits of the case. Marie pointed to the revised Uniform Arbitration Act, which it said Howsam had relied heavily on. It says waiver is an issue for courts. And then as to the expectations of the parties, I thought the 10th Circuit in Cahill put this most succinctly, which is the meaning of default in a federal statute is an issue the parties would likely have expected a court to have decided. Now, even then, I will say the district court did make a holding in the alternative as to the question of who decides, which is the district court said, even if this was a question that was for the arbitral forum or the arbitrator, the AAA effectively made that decision. And I think that follows from the plain language meaning of the term default. We cite those dictionaries at 34, 35. It's a failure to perform a legal requirement or obligation, failure to meet financial engagements, failure to perform an act and an adjudication within the required time. So if that's the plain meaning of default, then the AAA saying, you didn't pay your fees by the deadline we set, so we're shutting this down, that's effectively a determination of default. And that's what the 10th Circuit again said in Cahill. And Amex doesn't point to some separate procedure by which the AAA would have made some default determination, doesn't point to a part in its rules where the AAA administrators determined default. So this would be, in fact, the closest thing. So even if it was a question for the AAA or for arbitrators, it effectively answered that question. Now, I will say as to the question about the new rules, which this court inquired after, so there is no reason to think, there's nothing in the record that suggests that this closure was not final. As I mentioned, the language the AAA used closely tracks the language it and other arbitrators have used. So in Cahill, we've closed our file. In Freeman, the arbitration file will be closed. In Ronan, administratively closed. In Brewsda, administratively closed. In Souffrant, administratively closed. So this is the language that the AAA uses to close its arbitrations. Amex doesn't point to some procedure for reopening that to make some extra default determination. And the AAA- Is there anything in AAA's policy handbook that sets forth some kind of procedure for reopening? Amex has not pointed to something for reopening a case closed by nonpayment that I'm aware of. So you would have exactly the situation where the court can't compel AAA and their private non-party to arbitrate the cases, to reduce its fees. And so you would just be sending the parties back into this closed arbitration. And as to the new rules, so the AAA rules are clear on that. The rules apply, the set of rules apply as of the time that the parties meet their filing requirements. And the AAA expressly said here that we met our filing requirements. So no new set of rules would apply. Amex cites some letters that it wrote back and forth with the AAA after this case began. But as we set out in our brief at page 44, Amex was expressly referring to another set of cases. It in fact expressly said, we're not talking about the 5,155 cases where they paid the filing requirements. And that makes sense because the AAA rule is that it's the rules at the time of those filing requirements being met. So I think the new rules are a red herring, but it's even further down the road because it's closed. We would be reviewing Judge McElroy's findings for clear error, right? So if Judge McElroy had made factual findings, those would be reviewed for clear error. I think here what happened was it was argued as questions of law on a paper record. And I did want to add... There had to have been some underlying factual components of that that were accepted by both parties, such as the procedural history and what evidence got submitted about the communications with AAA. I understood from your brief that she referenced those. She did reference them, but I think in doing so, that wasn't resolving factual disputes because all the communications were there. It was more the parties had different characterizations of the same settled paper record. But I will say we think it's enough that Amex didn't follow the rules when the AAA made this decision. Here's what you have to pay or we'll close it down. But I will note to the extent that the record is of the disputes before the AAA is relevant, if I could point the court to just one document, it would be the AAA's January 30th letter at JA 907. And it sets it all out. It says, from the outset, we explained that if parties were seeking injunctive relief on their own behalf, we would charge the regular fee. It then asked the merchants for more details on their claims to see, are you asking for injunctive relief on your own behalf? When the merchants explained that they were, the AAA said, okay, we're just going to apply our rules. So even if there was consideration of what had happened before the AAA administrator's ultimate decision, it just cuts in the same way. And Judge McElroy, far from refusing to consider those things, I think if you look at her determination of the unclean hands issue, and we think there's no extra unclean hands exception to a default under section three of the AAA. The one case they cite was not using it actually as a term of art or applying it as a doctrine or explaining how it would apply. But in resolving that issue and the alternative, Judge McElroy said, I've reviewed the record and I will tell you from being at the hearing, she reviewed the record carefully and she found no misconduct on the side of the merchants. Okay. Thank you, counsel. Two minutes for bubbles. Or three minutes for bubbles. Thank you again, Peter Barber, representing Appellant American Express. I wanted to focus on the textual argument that my brother made, basically saying that because section three of the FAA said party seeking a stay can't be in default, that means a court has to decide the question of default. Nothing in the AAA actually says that. And in fact, the argument they're making that just because the language of default is in there and that means they say a district court always has to decide default. Well, that cannot be squared with this court's decision in Marie. In Marie, the court said there are some decisions that are for a court to decide and there are some for an arbitrator to decide. If you were to accept their extreme textual argument relating to default, that would mean every single decision always has to be made by a court, whether it's procedural or substantive and whether or not the AAA or an arbitrator has the relevant expertise. The Oliveira case was mentioned. It was a very different case. That had to do with whether the FAA applied at all to contracts involving transportation employment. So yes, there, the court had to decide whether the FAA applied at all before sending an issue to an arbitrator. But here, there's no dispute that the FAA applies. I think there was a question about whether there was a finding of default. I want to make clear that the AAA never made any finding of default here. All they said originally was, we want this amount in fees. Later, they said they wanted more and eventually they said the cases are quote, administratively closed. They were not terminated. Counsel mentioned the Cahill case. That is a case where a panel of arbitrators actually said- What does administratively closed mean from your perspective? It means subject to reopening at some point down the road if necessary. Is there something you can point to in AAA's rules that say that? No, but if you review the cases, there are many cases where arbitrators make definitive determinations that cases are quote unquote terminated and cannot be reopened. And indeed, there are cases where arbitrators make determinations of default. None of that happened here. There was nothing for the district court here to defer to on the question of default from AAA. Do you have any cases to support that administrative closure doesn't mean that? I don't. There's no case that I'm aware of. There aren't that many reported cases of arbitration issues as I'm sure you can imagine. So I'm not aware of any case that says administrative closure definitively means termination.  Okay. Thank you, counsel. Thank you. Court is adjourned until tomorrow 9 30 a.m.